# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

T.P.S.,

                Petitioner,

    vs.

KRISTI NOEM, *et al.*,

                Respondents.

Case No.: 2:26-cv-00249-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner T.P.S.'s Motion for Temporary Restraining Order, (ECF No. 2), and Petition for Habeas Relief, (ECF No. 3). Federal Respondents Kristi Noem, the United States Department of Homeland Security ("DHS"), Pamela Bondi, Todd Lyons, Brian Henkey, the United States Immigration and Customs Enforcement ("ICE"), and John Mattos filed a Response, (ECF No. 9), to which Petitioner filed a Reply, (ECF No. 10).

For the reasons discussed below, the Court GRANTS the Petition and DENIES as moot the Motion for Temporary Restraining Order.

## I.  BACKGROUND

Petitioner T.P.S. is ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████  ICE initiated removal proceedings against Petitioner. (*Id.*). On September 25, 2025, at his first master calendar hearing in front of an Immigration Judge ("IJ"), Petitioner requested his entire A-file from DHS, which they refused to provide.

1  (*Id.*).  On October 23, 2025, at Petitioner's second master calendar hearing, DHS had still not

2  provided the requested file—finding that DHS had failed to prove by clear and convincing

3  evidence that Petitioner was removable as charged, the IJ terminated Petitioner's removal

4  proceedings. (*Id.*); (*see* IJ Order, Ex. E to Pet., ECF No. 3-1).  DHS thereafter appealed the IJ's

5  Order to the Board of Immigration Appeals ("BIA"). (Pet. ¶ 3); (*see* Notice of Appeal at 1, Ex.

6  F to Pet., ECF No. 3-1).  That appeal remains pending, and Petitioner remains detained ▮

7  ▮     With this Petition, Petitioner challenges his continued detention and requests

8  immediate release.

9  ## II.  **LEGAL STANDARD**

10       The Constitution guarantees that the writ of habeas corpus is "available to every

11  individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

12  (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

13  custody upon the legality of that custody, and. . . the traditional function of the writ is to secure

14  release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

15  corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

16  Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction

17  includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687

18  (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

19  ## III.  **DISCUSSION**

20       Petitioner argues that he is entitled to injunctive relief because his detention violates his

21  right to due process under the Fifth Amendment, the Immigration Nationality Act ("INA"), and

22  the Administrative Procedure Act ("APA"). (Pet. ¶¶ 62–74).  Respondents argue that Petitioner

23  is detained under 8 U.S.C. § 1225(b)(2), and thus his continued detention is lawful. (Resp. 9:9–

24  14, ECF No. 9)  The Court first notes that Respondents did not file points and authorities in

25  response to Petitioner's Motion for Temporary Restraining Order, which constitutes consent to

the granting of the motion. LR 7-2(d).  The Court nonetheless addresses the merits of Petitioner's Motion and Petition.

### A. Legal Basis for Detention

Respondents argue that Petitioner remains an "applicant for admission" subject to detention under § 1225 because he "materially misrepresented facts on his application for lawful permanent residency in violation of 8 U.S.C. § 1182(a)(6)(C)(i)." (Resp. 12:9–13). Petitioner contends that Respondents misread § 1225, and that Petitioner is detained under § 1226(a).

The Supreme Court recently analyzed the relationship between § 1225 and § 1226 in *Jennings v. Rodriguez*, where the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." 583 U.S. at 287.  It further explained that § 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Id.* at 297.  Section 1225(b) governs detention of different categories of noncitizens seeking admission into the United States. Section 1225(b)(1) applies to two categories of noncitizens: (1) noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," and (2) noncitizens who have not been admitted to the United States and have not shown that they have been present in the United States for two years prior to "the determination of their inadmissibility." *Id.* at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)).  Section 1225(b)(2) is broader, serving as a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

By contrast, § 1226 "applies to [noncitizens] already present in the United States." *Id.* at 303.  "Section 1226(a) creates a default rule for those [noncitizens] by permitting—but not

requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.*

Here, Petitioner ████████████████████████████████████████████████
Respondents reason that Petitioner nonetheless remains an "applicant for admission" subject to detention under § 1225 because he "materially misrepresented facts on his application for lawful permanent residency in violation of 8 U.S.C. § 1182(a)(6)(C)(i)." (Resp. 12:9–13). Respondents' argument fails for several reasons.

Beginning with § 1225(b)(1), Respondents cannot show that Petitioner falls into either category of noncitizens to which that section applies.  First, Petitioner was not "initially determined to be inadmissible," but was in fact *admitted* to the United States as an LPR. (Pet. ¶ 16).  Second, Petitioner never received a determination of inadmissibility—while Petitioner was charged with allegedly misrepresenting facts on his LPR application, DHS withdrew that charge during removal proceedings, and the IJ later terminated those proceedings because DHS had failed to meet its burden to show that Petitioner was removable. (Reply 6:6–13, ECF No. 10); (IJ Order, Ex. E to Pet.); (Decl. of Melissa Corral ¶ 5, Ex. H to Pet., ECF No. 3-1).

Respondents also fail to show that Petitioner is subject to detention under § 1225(b)(2). Here, the crux of Respondents' argument is that Petitioner's receipt of LPR status did not constitute "lawful admission" because he obtained that status through misrepresentation. (Resp. 10:5–12).  However, that argument is based solely on speculation—as explained above, that argument was not accepted by the IJ, and DHS itself withdrew the allegation. (*See* Reply 6:6–13).  To the contrary, the record before the Court establishes that an immigration official determined that Petitioner was "clearly and beyond a doubt entitled to be admitted" after Petitioner completed an interview to become an LPR. (Decl. of T.P.S. ¶¶ 9–10, Ex. A to Pet., ECF No. 3-1).

Additionally, Respondents' reliance on *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132 (D. Neb. 2025), is unavailing. (Resp. 13:3–14:11).  That case, a decision issued by the United States District Court for the District of Nebraska, is persuasive authority at best.  Moreover, the petitioner in *Vargas Lopez* entered the United States without inspection and remained in the country without any immigration status, in stark contrast to Petitioner here, who has remained an LPR for over thirty years. 802 F. Supp. 3d at 1135.  Further, as Respondents point out, the petitioner in *Vargas Lopez* was determined to be detained under § 1225, in part, because he failed to produce a warrant for his arrest. *Id.* at 1140; (Resp. 13:14–17).  Detention under § 1226 requires a warrant, whereas detention under § 1225 does not. *See* 8 U.S.C. § 1226(a).  Yet here, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Because Petitioner does not fit into any category of noncitizen eligible for detention under § 1225, the Court concludes that he is detained under § 1226(a).

**B. Violation of Fifth Amendment Right to Due Process**

Having found that Petitioner is detained under § 1226(a), the Court next determines whether his detention violates due process.  To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–07 (9th Cir. 2022) ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened government interest in the immigration detention context.").  Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### 1. Analysis of the *Mathews* Factors

The first *Mathews* factor considers the private interest affected by the Government's ongoing detention of Petitioner despite the termination of his removal proceedings. *See Matthews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." *Mathews*, 424 U.S. at 335. Here, there are no existing procedures for Petitioner to challenge his detention; while § 1226(a) provides that a noncitizen "may" be released after a bond hearing before an IJ, seeking a bond hearing here is impossible for Petitioner because his removal proceedings have been terminated. The risk of erroneous deprivation is extremely high where DHS agency officials have sole, unreviewable discretion to detain Petitioner without an individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Given the IJ's decision to terminate removal proceedings due to DHS's failure to show Petitioner's removability by clear and convincing evidence, it is possible that Petitioner is being detained unjustifiably.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the Government's interests in enforcing immigration laws, including "protecting the public from

dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208.  However, the Government here failed to meet its burden in demonstrating that Petitioner was removable by clear and convincing evidence, which resulted in the termination of Petitioner's removal proceedings.  It is not clear to the Court what interest Petitioner's continued detention will serve in light of the IJ's decision; indeed, keeping Petitioner detained for an unknown period of time during the pendency of the Government's appeal only increases the fiscal and administrative burdens on the Government.

The Court thus finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and his detention after the termination of his removal proceedings violates the Due Process Clause of the Fifth Amendment.[1]

### C. Relief Requested

Petitioner asks this Court to order his immediate release. (Pet. 27:5–7.)  For the reasons discussed above, the Court grants this requested relief.

## IV.    CONCLUSION

**IT IS HEREBY ORDRED** that Petitioner's Petition for Habeas Relief, (ECF No. 1), is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention within 24 hours.

**IT IS FURTHER ORDERED** that the parties must file a Joint Status Report no later than February 23, 2026, to certify compliance with the Court's order.

---

[1] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether Petitioner's detention violates the INA or the APA.

1   **IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from re-detaining

2   Petitioner unless Petitioner is provided with (1) written notice before a pre-deprivation bond

3   hearing and (2) it is demonstrated, by clear and convincing evidence at a pre-deprivation bond

4   hearing before a neutral decisionmaker, that Petitioner is a flight risk or a danger to the

5   community such that physical custody is legally justified.

6   **IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining

7   Order, (ECF No. 2), is **DENIED as moot.**

8   Counsel for Respondents are directed to immediately provide notice of this Order to the

9   parties they represent.  The Clerk of Court is kindly directed to send a copy of this Order to the

10  Warden of ███████████████████████████████████.

11  **DATED** this ___20___ day of February, 2026.

12

13  _____

14  Gloria M. Navarro, District Judge
    United States District Court

15

16

17

18

19

20

21

22

23

24

25